1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROCHELLE MARIE HARDISON,

11              Plaintiff,                    No. CIV 2:10-cv-0002-GEB-JFM

12   vs.

13   REMEDIOS C. COPELAND,

14              Defendant.

15   _____/   FINDINGS AND RECOMMENDATIONS

16              Plaintiff Rochelle Marie Hardison's motion for default judgment came on for

17   hearing July 15, 2010.  Karl-Fredric Seligman appeared for plaintiff.  Defendant did not appear.

18   At the hearing, counsel for plaintiff was ordered to address the applicability of the domestic

19   relations exception to this case.  On July 29, 2010, plaintiff filed a post-hearing brief in which he

20   argues that the exception is inapplicable.  Upon review of the motion and the documents in

21   support, upon hearing the argument of counsel and good cause appearing therefor, THE COURT

22   FINDS AS FOLLOWS:

23              This action is before this court on diversity jurisdiction pursuant to 28 U.S.C.

24   § 1332(a).  Plaintiff is a citizen of Illinois and defendant is a citizen of California.  Plaintiff

25   claims the amount in controversy exceeds the sum of $75,000.00.

26   /////

1

1.    Factual Background

        Plaintiff filed suit against defendant Remedios Copeland on December 31, 2009 for declaratory relief.  Plaintiff seeks a declaration that she, and not defendant, is the lawful surviving spouse of Steven W. Copeland, a seaman.  This determination is essential to receipt of benefits under the "Seafarers Pension Plan"[1] ("the Plan"), which will provide Mr. Copeland's lawfully surviving spouse benefits by way of annuity. The Plan's benefits became payable in 2008 when Mr. Copeland would have reached the Plan's earliest retirement age.  The benefits under the Plan are alleged to exceed $75,000.00.

        Plaintiff submits a marriage certificate from Alameda County in California dated November 30, 1981.  (Compl., Ex. B.)  The certificate lists the groom's name as Steven William Copeland and the bride's name as Rochelle Marie Hardison.  (Id.)  Plaintiff asserts that on or about May 1989, Mr. Copeland married defendant in the Republic of the Philippines.  (Compl. at 3.)  Plaintiff claims that she was married to Mr. Copeland at the time of his marriage to defendant.  (Id.)

        Plaintiff also submits a death certificate for Mr. Copeland.  (Compl., Ex. C.)  Mr. Copeland passed away on July 8, 2002 in San Juan, Puerto Rico.  (Id.)  The certificate identifies Mr. Copeland's spouse as Remedios Copeland.  (Id.)  Defendant currently lives in this district.

2.    Request for Default Judgment

        The complaint in this matter was personally served upon defendant on March 3, 2010.  Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).  Defendant has not filed an answer.  The clerk of the court entered default against defendant on April 9, 2010.  There is no evidence that defendant was served with notice of the entry of default.  Plaintiff's motion for entry of default

/////

---

[1] Plaintiff does not identify this plan in any way other than by name.

1  judgment was served by mail on defendant at her last known address on June 15, 2010.

2  Defendant has filed no opposition to the motion for entry of default judgment.

3        Entry of default effects an admission of all well-pleaded allegations of the

4  complaint by the defaulted party.  Geddes v. United Financial Group, 559 F.2d 557 (9th Cir.

5  1977).  Entry of default judgment is proper where the facts established by the default support the

6  causes of action pled in the complaint.

7        "A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6). . . .

8  Such dismissal may be made without notice where the claimant cannot possibly win relief."

9  Omar v. Sea-Land Service, Inc., 813 F.2d 986, 991 (9th Cir. 1987); see Wong v. Bell, 642 F.2d

10  359, 361-62 (9th Cir. 1981).

11        Federal courts are courts of limited jurisdiction and lack inherent or general

12  subject matter jurisdiction.  Federal courts can adjudicate only those cases in which the United

13  States Constitution and Congress authorize them to adjudicate.  Kokkonen v. Guardian Life Ins.

14  Co., 511 U.S. 375 (1994); Finley v. United States, 490 U.S. 545 (1989).  Lack of subject matter

15  jurisdiction is never waived and may be raised by the court sua sponte.  Attorneys Trust v.

16  Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

17        Examination of the complaint requires the undersigned to recommend that the

18  court dismiss this matter for lack of jurisdiction.  Generally, domestic and family law matters,

19  including divorce and custody, are state courts' primary responsibility.  Federal courts are

20  prevented to hear such disputes under the "domestic relations exception" to federal jurisdiction.

21  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992); Newman v. Indiana, 129 F.3d 937 (7th Cir.

22  1997).  This doctrine is based on the notion that "the whole subject of domestic relations of

23  husband and wife, parent and child, belongs to the laws of the States and not to the laws of the

24  United States."  Welker v. Metropolitan Life Ins. Co., 502 F.Supp.268, 269 (D.C. Cal. 1980)

25  (internal citations omitted).

26  /////

The domestic relations exception has been narrowly confined to "those cases most closely resembling historically ecclesiastical actions," as in "where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child." See Csibi v. Fustos, 670 F.2d 134, 137 (9th Cir. 1982).  There is, however, a separate class of cases wherein federal courts decline jurisdiction over cases that involve domestic relations.  The rule in the Ninth Circuit is that where, in a diversity case, the primary issue involves the status of parent and child or husband and wife, the district court "must decline jurisdiction."  Buechold v. Ortiz, 401 F.2d 371, 372 (9th Cir. 1968).  Core or ancillary proceedings stemming from domestic relations or family law disputes fall within the exception.

In Csibi, a diversity action was brought by the decedent's alleged first wife to establish rights in decedent's estate.  670 F.2d at 135.  Plaintiff, the first wife, claimed she married decedent in Rumania in 1946 and that her marriage was never dissolved.  The decedent left Rumania in 1969 and emigrated to the United States where, in 1970, he married defendant, the second wife.  The Ninth Circuit reiterated Buechold's "primary issue" test and dismissed the action for lack of subject-matter jurisdiction after concluding that the "case turns on a determination of the marital status of [decedent], [plaintiff] and [defendant]."

The Csibi court also referred to Welker v. Metropolitan Life Ins. Co., 502 F.Supp. 268 (C.D. Cal. 1980).  In Welker, a woman claiming to be the putative spouse of a decedent brought an action to recover the life insurance proceeds that Metropolitan had paid to the decedent's first, legal spouse.  Using the Buechold test, the court declined jurisdiction, noting that the plaintiff sought to establish her status as putative spouse and that "all relief plaintiff seeks from this action is subsidiary to and dependent upon that status."  502 F.Supp. at 270.

Similarly, here, plaintiff's receipt of benefits under the Seafarers Pension Plan turns on a determination of the marital status of Mr. Copeland, plaintiff and defendant.  Applying Buechold's "primary issue" test to the facts of this case reveals that the court must decline jurisdiction because the primary issue concerns the status of husband and wife.

1    Plaintiff argues that this case is not barred by the domestic relations exception.

2    (See Post-Hearing Brief.)  Plaintiff asserts that the exception is applicable only when there are

3    state court proceedings pending or anticipated.  (Id. at 1.)  Plaintiff, however, seemingly

4    confuses two principles relied upon by the lower courts in declining jurisdiction in Ankenbrandt.

5    Under the first, the lower courts declined jurisdiction on the basis of the domestic relations

6    exception.  504 U.S. at 2209-15 (citing Barber v. Barber, 21 How. 582, 16 L.Ed. 226 (1859)).

7    Under the second, the lower courts relied on the alternative ground of abstention to decline

8    jurisdiction.  Id. at 2215-16 (citing Younger v. Harris, 401 U.S. 37 (1971)).  Pursuant to

9    Younger, federal courts have generally abstained from jurisdiction when there were proceedings

10   pending in state court.  Younger, however, is inapplicable to this case as there is no pending state

11   court proceeding and this court does not rely on it.  Instead, the court relies solely on the

12   domestic relations exception, as articulated in Buechold and Csibi, to find that the court must

13   dismiss this action for lack of subject matter jurisdiction.

14   Based on the foregoing, IT IS HEREBY RECOMMENDED that plaintiff's June

15   15, 2010 motion for entry of default judgment be denied and this case be dismissed for lack of

16   subject matter jurisdiction.

17   These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

"Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 9, 2010.

UNITED STATES MAGISTRATE JUDGE

/014;hard0002.def

6